IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:10-CV-39-FL

| | |
|---|---|
| JO L. PETERSON for H.B. III, a minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings (DE's 9 & 13). The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter is before the undersigned for the entry of a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Supplemental Security Income ("SSI"). For the following reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-9) be DENIED, Defendant's Motion for Judgment on the Pleadings (DE-13) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff, acting through his mother, filed an application for SSI on April 10, 2006 (Tr. 11). This application was denied at the initial and reconsideration levels of review (Tr. 11). A hearing was later held before an Administrative Law Judge ("ALJ"), who found Plaintiff was not

1

disabled during the relevant time period in a decision dated December 10, 2008 (Tr. 11-21). The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review, rendering the ALJ's determination as Defendant's final decision (Tr. 3-5). Plaintiff filed the instant action on March 8, 2010 (DE-1).

## Analysis

A child is considered disabled for SSI purposes only if the child suffers from a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" and which lasts for a period of not less that 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). A three-step sequential process is utilized when evaluating children's SSI claims. 20 C.F.R. § 416.924. This process requires the ALJ to consider, in order, whether the child: 1) is engaged in substantial gainful employment; 2) has a severe impairment; and 3) has an impairment that meets, medically equals or functionally equals the requirements of a listed impairment. *Id.* As with the process for adults, if the ALJ determines that a child is not disabled at any point in this process, review does not proceed to the next step. *Id.* Thus, under the applicable regulations, an ALJ may find a child to be disabled within the meaning of the Social Security Act only if he finds that the child has a severe impairment or combination of impairments that meets, medically equals or functionally equals an impairment listed in Appendix 1. 20 C.F.R. § 416.924(d)(1); 42 U.S.C. 1382c(a)(3)(C)(i).

To determine whether a child's impairments functionally equals a listed impairment, the ALJ evaluates a child's functional limitations in six domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for himself or herself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

2

These regulations provide that a child is "disabled" if he or she has an impairment or impairments of "listing-level severity" that is an "extreme" limitation in one of these domains or "marked" limitations in two or more domains. 20 C.F.R. § 416.926a(a). A marked limitation in a domain is found when an impairment interferes seriously with a claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An extreme limitation in a domain is found when the impairment interferes "very seriously" with a claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

The Court's role in this case is limited to determining whether substantial evidence exists in the record to support the Commissioner's findings. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support of particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Where there is substantial evidence to support the finding below, this Court may not substitute its judgment for that of the ALJ. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *Id.* In determining whether substantial evidence supports the Commissioner's decision, the Court must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting the evidence. Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-440 (4th Cir. 1997). If substantial evidence exists to support the ALJ's finding that a claimant is not disabled, this Court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. Laws, 368 F.2d at 642.

The ALJ employed the sequential evaluation process in this matter. First, he determined that Plaintiff had not engaged in substantial gainful activity since the date of his application for benefits (Tr. 14). At step two, the ALJ determined that Plaintiff had one severe impairment,
3

restrictive cardiomyopathy (Tr. 14). In so concluding, the ALJ examined in detail the evidence relating to each of the domains set forth in the regulations. (Tr. 16-21). Specifically, the ALJ determined that Plaintiff had: 1) less than marked limitation in the domain of acquiring and using information; 2) no limitation in the domain of attending and completing tasks; 3) no limitation in the domain of interacting and relating with others; 4) no limitation in the domain of moving about and manipulating objects; 5) no limitation in the domain of caring for himself or herself; and 6) less than marked limitation in the domain of health and physical well-being (Tr. 16-21). Ultimately, the ALJ concluded that Plaintiff was not disabled at any time through the date of his decision (Tr. 21). The ALJ relied upon substantial evidence in reaching this conclusion. A summary of this substantial evidence now follows.

Plaintiff was born on March 24, 2006 (Tr. 103). Soon after delivery he became ill with pulmonary hypertension and he was transferred to Duke University Medical Center ("DUMC") (Tr. 319). He was transferred to Cape Fear Valley Medical Center and remained hospitalized until June 24, 2006 (Tr. 109, 130, 139). During this time Plaintiff was diagnosed with, *inter* alia, restrictive cardiomyopathy, cholestatic jaundice, and ventriculomegaly (Tr. 143, 319). An x-ray of Plaintiff's chest taken on March 25, 2006 revealed that Plaintiff's lungs were clear and that there was no acute cardiopulmonary disease (Tr. 99, 100, 117). Further testing on March 28, 2006 indicated that Plaintiff's heart size and pulmonary vasculature were within normal limits and that his lungs were clear (Tr. 194). X-rays taken on May 30, 2006 demonstrated that Plaintiff's lungs were normally expanded and clear of infiltrates (Tr. 146). In addition, Plaintiff's heart and pulmonary vessels were normal size (Tr. 146). Upon discharge, most of Plaintiff's conditions were described as "resolved" or "resolving" (Tr. 139-141). The only condition not so described was Plaintiff's ventriculomegaly, which was deemed "active" (Tr. 142).

Dr. Stephen Miller examined Plaintiff on July 31, 2006. Plaintiff was not in acute distress. His lungs were clear to auscultation bilaterally without any wheezes, rales or rhonchi (Tr. 319). Plaintiff's cardiac impulse was normal (Tr. 319). Ultimately, Dr. Miller concluded that Plaintiff was "doing quite well clinically with excellent growth and development" (Tr. 320). However, Dr. Miller did note that Plaintiff would "need to have continued close cardiac followup as he grows, to evaluate any progressive deterioration in his diastolic and/or systolic function . . . [w]hile his ultimate outcome cannot be predicted at this point, he may wind up someday in the situation of needing a heart transplant" (Tr. 320).

On August 1, 2006 Dr. Ricki Goldstein stated that he was "pleased with . . . [Plaintiff's] growth and developmental progress" (Tr. 325). However, Dr. Goldstein was concerned with Plaintiff's reactive airway disease and cardiomyopathy (Tr. 325).

Dr. Margaret Barham evaluated Plaintiff's impairments on August 17, 2006 (Tr. 84). She determined that Plaintiff's impairment or combinations of impairments were severe, but did not meet, medically equal or functionally equal any listed impairment (Tr. 84). Specifically, Dr. Barham determined that Plaintiff had:  1) less than marked limitation in the domain of acquiring and using information; 2) no limitation in the domain of attending and completing tasks; 3) no limitation in the domain of interacting and relating with others; 4) no limitation in the domain of moving about and manipulating objects; 5) no limitation in the domain of caring for himself or herself; and 6) less than marked limitation in the domain of health and physical well-being (Tr. 86-87). These determinations were affirmed by Dr. Jolene Jean-Gracia on September 7, 2006 (Tr. 85).

During a reevaluation of Plaintiff's cardiac status on October 30, 2006, Dr. Miller stated that Plaintiff was "completely asymptomatic" (Tr. 498). It was also noted that Plaintiff was

tolerating all of his medications well (Tr. 498).

X-rays of Plaintiff's chest taken on January 23, 2007 were normal (Tr. 365, 456). Specifically, Plaintiff's bony structures and soft tissues were within normal limits (Tr. 456).

On February 19, 2007, Dr. Jeffrey D. Martin evaluated the severity of Plaintiff's impairments (Tr. 91). He determined that Plaintiff's impairment or combinations of impairments were severe, but did not meet, medically equal or functionally equal any listed impairment (Tr. 91). Specifically, Dr. Martin determined that Plaintiff had: 1) less than marked limitation in the domain of acquiring and using information; 2) no limitation in the domain of attending and completing tasks; 3) no limitation in the domain of interacting and relating with others; 4) no limitation in the domain of moving about and manipulating objects; 5) no limitation in the domain of caring for himself or herself; and 6) marked limitation in the domain of health and physical well-being (Tr. 93-94).

Dr. Miller reevaluated Plaintiff on March 1, 2007 and April 30, 2007. During both examinations, he stated that Plaintiff was doing "quite well overall without any significant problems or concerns" (Tr. 491, 495). Ultimately, on both occasions Dr. Miller concluded that Plaintiff was doing "very well clinically" (Tr. 492, 495).

On October 15, 2007 Plaintiff was treated in the Southeastern Regional Medical Center Emergency Room for: 1) congenital anomaly of the heart; 2) low grade fever; 3) cough; 4) asthmatic bronchitis; and 5) pharyngitis (Tr. 376). His cardiovascular examination was within normal limits (Tr. 411). X-rays revealed no evidence of acute cardiopulmonary disease (Tr. 420). Upon discharge, it was noted that Plaintiff was improving and was in less respiratory distress (Tr. 376, 378). Specifically, it was indicated that Plaintiff's mild respiratory distress had resolved (Tr. 410).

Another chest x-ray taken on December 27, 2007 was also normal (Tr. 384). After examination, Plaintiff was diagnosed with fever and pharyngitis (Tr. 387). Plaintiff was not in acute respiratory distress (Tr. 387). He also had regular heart rate and rhythm (Tr. 387).

Dr. Miller examined Plaintiff again on April 28, 2008. He stated that Plaintiff was doing "quite well without out any significant problems or concerns" (Tr. 485). According to Dr. Miller, Plaintiff "keeps up well with other children his age and has no cardiorespiratory symptoms" (Tr. 485). Finally, Dr. Miller was also "optimistic that . . . [Plaintiff's] presumed restrictive cardiomyopathy may be resolving" (Tr. 486).

Plaintiff was treated in the Southeastern Regional Medical Center Emergency Room for vomiting, coughing and wheezing on April 30, 2008 (Tr. 394). Upon examination, Plaintiff's breath sounds were normal (Tr. 395). He also had normal heart rate and rhythm (Tr. 394). When he was re-evaluated it was noted that Plaintiff's symptoms were improving (Tr. 396). An x-ray of Plaintiff's chest yielded normal results (Tr. 434). Plaintiff's lung fields were well expanded and free of active infiltrate (Tr. 434).

Dr. Michael Bartiss evaluated Plaintiff for a possible eye muscle imbalance on June 5, 2008. Plaintiff's external exam was normal (Tr. 549). However, cover testing demonstrated significant non-accommodative esotropia (Tr. 549).

On October 29, 2008, Plaintiff was reevaluated by Dr. Miller. Again, Dr. Miller observed that Plaintiff was doing "quite well without any significant problems or concerns" (Tr. 488). It was specifically noted that Plaintiff had recovered well from his recent hospitalization (Tr. 488). Dr. Miller concluded that Plaintiff "continues to do quite well clinically" (Tr. 489).

Based on the forgoing record, the Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Plaintiff's assignments of error essentially ask this Court

to re-weigh evidence already considered by the ALJ. However, this Court must uphold Defendant's factual findings if they are supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court to do, his entire claim is meritless.

## **Conclusion**

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-9) be DENIED, Defendant's Motion for Judgment on the Pleadings (DE-13) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Monday, November 15, 2010.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE